JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant-mother ("mother") appeals from a judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor child, M.W., to appellee, Cuyahoga County Department of Children and Family Services ("CCDCFS"). For the following reasons, we affirm.
 {¶ 2} M.W. was born on August 23, 2007. On September 6, 2007, CCDCFS filed a complaint for pre-dispositional order of temporary custody and permanent custody, alleging that M.W. was an abused, neglected and dependent child. Specifically, the complaint alleged, inter alia, that at the time of M.W.'s birth, she and mother tested positive for cocaine and marijuana; that mother failed to obtain prenatal care; that mother had a chronic and severe substance abuse problem; and that mother had an extensive history with CCDCFS, including six children being permanently removed from her custody due to her substance abuse problem.
 {¶ 3} At the shelter care hearing, the juvenile court found that probable cause existed to remove M.W. pursuant to R.C. 2151.31 and granted emergency temporary custody to CCDCFS. M.W. was placed in the same foster home where one of her biological siblings had been placed. Mother was given two hours of *Page 4 
supervised visitation every Tuesday. A guardian ad litem ("GAL") was also appointed for M.W.
 {¶ 4} According to the case plan, mother was to refrain from using drugs and alcohol, complete a drug assessment and follow through with all recommendations, and complete random urine screens; obtain and maintain stable housing and provide for M.W.'s basic needs; participate in and complete a psychological evaluation, and follow all recommendations; and participate in and complete an approved parenting class. The alleged father was also required to establish paternity.[1]
 {¶ 5} The trial court held a preliminary hearing on October 25, 2007. The mother denied the allegations in the complaint and signed a waiver of the 90-day statutory time limit required for a dispositional hearing under R.C. 2151.35(B)(1).
 {¶ 6} On February 12, 2008, at the adjudicatory hearing, mother stipulated to amended allegations in the complaint. The trial court then found M.W. to be an abused, neglected, and dependent child. The court continued the prior order of temporary custody to CCDCFS and continued the case for disposition.
 Dispositional Hearing *Page 5 {¶ 7} On April 29, 2008, Matthew Goodwin, the CCDCFS social worker assigned to the case, testified that CCDCFS had been involved with mother for approximately ten years. Goodwin explained that mother had eight other children; one died shortly after birth, one was in the legal custody of her father, and six had been permanently removed from mother's custody as a result of mother's substance abuse issues.
 {¶ 8} Goodwin testified that mother had entered an intensive outpatient treatment program, but that she did not complete it because "[s]he was discharged due to continued use and * * * sporadic attendance at times and she failed to maintain her sobriety." He said that mother was then referred to an inpatient residential program on March 7, 2008, but was also discharged for "non-compliance with the program."
 {¶ 9} At the time of trial, Goodwin stated that mother was homeless. She was staying with a friend, but that it was not a suitable place for M.W. to live. Goodwin indicated that mother had never "really had stable housing or stable living situation."
 {¶ 10} Goodwin further reported that mother completed a psychological assessment and had been diagnosed with major depressive disorder and schizo-effective disorder. He explained that mother had been consistent with her mental health appointments and had been taking her medications. *Page 6 
 {¶ 11} In addition Goodwin testified that mother had been consistent with her weekly visits with M.W. He said that initially he had concerns with her parenting capabilities, but that she had made progress in that area during her visits. Goodwin stated that mother did not complete an approved parenting class because the agency never referred her to one due the fact that her substance abuse issues had not yet been resolved.
 {¶ 12} Goodwin explained that M.W. had been in the same foster home since birth and that her biological sibling also lived in the home and had been adopted by the foster mother. M.W. had bonded with her foster mother and her foster mother had expressed a desire to adopt her. No relatives were appropriate or suitable for potential placement.
 {¶ 13} The alleged father had not established paternity for M.W.
 {¶ 14} Goodwin agreed on cross-examination that mother had not had a positive urine screen since February 26, 2008. He also agreed that mother had made progress with her mental health treatment and parenting abilities, but he would not agree that mother had made progress with regard to her substance abuse issues.
 {¶ 15} Diane Cranfield, a case manager at Two-Ways Home, testified for mother. Cranfield was assigned to the case at the time of M.W.'s birth. Mother had indicated to Cranfield that she wanted to reunify with M.W., but needed a lot of help. *Page 7 
 {¶ 16} Cranfield explained Two-Ways Home's main priority with mother was her mental health issues. She said that mother received a substance abuse assessment in September 2007, but did not receive a mental health assessment until late November. In her opinion, that was a problem because "[mother] was sent to treatment but she didn't have anything to help her to function. She didn't have medication, didn't have a mental health counselor, [and] she wasn't receiving any kind of psychiatric support."
 {¶ 17} Cranfield testified that mother had many struggles, including sleeping issues and getting up in the morning. Mother was cooperative with Cranfield, however, throughout her contact with mother for nearly eight months.
 {¶ 18} Cranfield said that four to six weeks after mother began taking medication for her mental health issues, she demonstrated an increase in her ability to function: "[t]o sleep at night, to get up in the morning, to be places on time, to remember she had an appointment and to be able to engage herself in a group. Her mood became more stabilized. She became less erratic."
 {¶ 19} Cranfield explained that in late February, when mother tested positive for cocaine, Cranfield was able to verify that the psychiatrist (who was giving mother her medication) did not send it. She opined that was why mother had relapsed.
 {¶ 20} Cranfield further testified that when mother was placed in the residential treatment center, it was a non-smoking facility. According to *Page 8 
Cranfield, this was a problem because a person who is dependent on nicotine, like mother, will most likely fail in a facility that does not allow smoking, especially if that person has mental health and substance abuse issues. She said, "you're just asking for that nicotine withdraw to sabotage [her] treatment."
 {¶ 21} After mother was discharged from the residential treatment facility, Cranfield explained that she began attending 12-step substance abuse meetings almost four or five times a week to help her maintain her sobriety. She stated that mother had definitely become "more lucid and higher functioning."
 {¶ 22} On cross-examination, Cranfield stated that mother ran out of her medications on or about February 20, and relapsed a few days later. But Cranfield admitted that mother also tested positive for cocaine on February 6, 2007, before she ran out of her medication. She further admitted that even though mother was on her medication throughout January, she struggled with her attendance at Recovery Resources. But Cranfield stated that was not "uncommon for a person in early treatment."
 {¶ 23} After hearing all the evidence, the juvenile court found by clear and convincing evidence that M.W. could not be placed with her parents within a reasonable time and that permanent custody was in M.W.'s best interest.
 {¶ 24} It is from this judgment which mother appeals, raising the following two assignments of error: *Page 9 
 {¶ 25} "[1.] The trial committed error when it failed to comply with Juvenile Rule 29 prior to accepting [mother's] admission to the amended complaint.
 {¶ 26} "[2.] The trial court committed error when it granted permanent custody of [M.W.] to CCDCFS."
 Juv. R. 29 and App. R. 4(A) {¶ 27} In her first assignment of error, mother argues that before accepting her admission to the complaint, the trial court failed to inform her of the consequences associated with her admission under Juv. R. 29. While we agree with mother that the juvenile court did not comply with Juv. R. 29, we cannot reach the merits of this issue based upon the Ohio Supreme Court's recent decision, In re H.F., Slip Opinion No. 2008-Ohio-6810. Pursuant to In re H.F., this court lacks jurisdiction over the juvenile court's adjudicatory order finding M.W. to be an abused, neglected, and dependent child.[2]
 {¶ 28} In In re H.F., reversing this court, the Ohio Supreme Court held, "[a]n appeal of an adjudication order of abuse, dependency, or neglect and the award of temporary custody pursuant to R.C. 2151.353(A)(2) must be filed *Page 10 
within 30 days of the judgment entry pursuant to App. R. 4(A)." Id. at the syllabus.
 {¶ 29} This court had previously held that App. R. 4(B)(5) provided an exception to the general rule under App. R. 4(A).[3] See In reH.F., 176 Ohio
 {¶ 30} App.3d 106, 2008-Ohio-1627; In re A.C, 160 Ohio App.3d 457,2005-Ohio-1742; In re S.G., 8th Dist. No. 84228, 2005-Ohio-1163; andIn re A.D., 8th Dist. No. 87510, 2006-Ohio-6036. . We had determined that "`App. R. 4(B)(5) permitted a parent to appeal an adjudicatory ruling either at the time that ruling was made or in the appeal of the final dispositional order.'" In re H.F., 176 Ohio App.3d at _30, quotingIn re A.C. at _11.
 {¶ 31} In In re H.F., however, the Ohio Supreme Court reaffirmed its holding in In re Murray (1990), 52 Ohio St.3d 155, that "[a]n adjudication by a juvenile court that a child is `neglected' or `dependent' as defined by R.C. Chapter 2151 followed by a disposition awarding temporary custody to a public children services agency pursuant to R.C. 2151.353(A)(2) constitutes a `final order' within the meaning of R.C. 2505.02 and is appealable to the court of appeals pursuant to R.C. 2501.02." In re H.F. at _8. *Page 11 
 {¶ 32} The Ohio Supreme Court determined that App. R. 4(B)(5) does not provide an exception to App. R. 4(A) in this situation because although adjudication orders constitute "final orders," they do not constitute "partial final orders," and the exception in App. R. 4(B)(5) only applies to "partial final orders." Id. at _12. It reasoned that an adjudication order concludes "the immediate action between the parties," and "there is no assurance that a parent would have an alternate opportunity to appeal an adjudication order." Id. at _13-14. It further reasoned that after a juvenile court adjudicates a child abused, neglected, or dependent, "there are no issues left pending." Id. at _15. It concluded that no issues remain pending even though the juvenile court retains jurisdiction to eventually enter a final disposition for the child. Id. at _16.
 {¶ 33} Thus, based upon the Supreme Court's holding in In reH.F., this court does not have jurisdiction to address mother's first assignment of error since she did not appeal it within 30 days of the adjudication order under App. R. 4(A).
 Permanent Custody Determination {¶ 34} In her second assignment of error, mother argues that the trial court erred when it granted permanent custody to CCDCFS because it did not have "sufficient evidence before it to satisfy the requisite degree of proof" that is required before granting permanent custody. *Page 12 
 {¶ 35} In Ohio, the termination of parental rights is governed by R.C. 2151.414. In re M.H., 8th Dist. No. 80620, 2002-Ohio-2968, at ¶ 22. A trial court must apply a two-prong test under this statute, measured by clear and convincing evidence. Id.
 {¶ 36} Clear and convincing evidence is "that measure or degree of proof which is more than a mere `preponderance of the evidence' but not to the extent of such certainty required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."In re Awkal (1994), 95 Ohio App.3d 309, fn. 2, citing Lansdowne v.Beacon Journal Publishing Co. (1987), 32 Ohio St.3d 176, 180-181.
 {¶ 37} Thus, the juvenile court must find, by clear and convincing evidence, (1) that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, pursuant to at least one of the factors listed in R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors enumerated in R.C. 2151.414(D).
 Standard of Review {¶ 38} In reviewing a trial court's decision in a permanent custody matter, the appellate court affords great deference to the trial court's decision. The trial court is present to observe the parties and gain knowledge which cannot be *Page 13 
conveyed in the written record. Trickey v. Trickey (1952),158 Ohio St. 9, 13. Thus, the trial court's determination in a custody proceeding is subject to reversal only upon a showing of an abuse of discretion.Dailey v. Dailey (1945), 146 Ohio St. 93. An abuse of discretion requires an arbitrary, capricious, or unreasonable decision.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 Placement With Either Parent {¶ 39} The trial court's determination of whether the child cannot or should not be placed with either parent is guided by R.C. 2151.414(E). This section sets forth sixteen factors that the trial court may consider in its determination. It provides that if the trial court finds by clear and convincing evidence that any of the 16 factors exists, the court must enter a finding that the child cannot or should not be placed with either parent within a reasonable period of time. In re D.J., 8th Dist. No. 88646, 2007-Ohio-1974, _64. Relevant to this section, the trial court made the following findings:
 {¶ 40} "Following placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the mother has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. [R.C. 2151.414(E)(1).] *Page 14 
 {¶ 41} "Mother has a chronic chemical dependency that is so severe that it makes the mother unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the Court holds hearing in this matter. [R.C. 2151.414(E)(2).]
 {¶ 42} "The alleged father has neglected the child between the date of the original complaint was filed and the date of the filing of this motion by the failure to regularly visit, communicate, or support the child. [R.C. 2151.414(E)(3).]
 {¶ 43} "Parents have demonstrated a lack of commitment towards the child by failing to regularly support, visit, or communicate with the child when able to do so, or by their own actions, have shown an unwillingness to provide an adequate permanent home for the child. [R.C. 2151.414(E)(4).]
 {¶ 44} "Alleged father has abandoned the child. [R.C. 2151.414(E)(10).]
 {¶ 45} "Mother has had parental rights terminated involuntarily with respect to a sibling of the child. [R.C. 2151.414(E)(11).]
 {¶ 46} "Parents are unwilling to provide food, clothing, shelter, and other necessities for the child or to prevent the child from suffering emotional or mental neglect, as evidenced by their unwillingness to successfully complete a case plan so they can provide care for the child. [R.C. 2151.414(E)(14).] *Page 15 
 {¶ 47} "Parents have committed abuse or neglect to the child and the likelihood of recurrence of the abuse or neglect makes the child's placement with the parent a threat to the child's safety. [R.C. 2151.414(E)(15).]"
 {¶ 48} After reviewing the record in its entirety, we find that it supports the trial court's determination that M.W. cannot and should not be returned to either parent.
 {¶ 49} One of the 16 factors would have been sufficient. It is undisputed that mother had six previous children involuntarily removed from her custody. This factor alone would have supported the trial court's finding that M.W. could not or should not be returned to mother within a reasonable period of time.
 {¶ 50} But the record also shows that while mother was making some progress towards her case plan, she still had not obtained a stable and secure living arrangement for M.W. In addition, mother tested positive for cocaine in early and late February (even though she was on her mental health medication in early February). And mother had been discharged from two treatment programs for noncompliance; an outpatient and inpatient facility.
 {¶ 51} In light of this evidence, as well as the other factors, the trial court did not err in determining that notwithstanding reasonable efforts by CCDCFS to reunite M.W. with mother, M.W. cannot and should not be placed with either parent within a reasonable time.
 Best Interest Determination *Page 16 {¶ 52} R.C. 2151.414(D) provides that the juvenile court, in determining the best interest of the child, "shall consider all relevant factors, including, but not limited to, the following:
 {¶ 53} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 54} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard to the maturity of the child;
 {¶ 55} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public service agencies * * * for twelve or more months of a consecutive twenty-two month period * * *;
 {¶ 56} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 57} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents of the child."
 {¶ 58} The statute requires a weighing of all the relevant factors and one factor is not given greater weight than the others. In reSchaefer, 111 Ohio St.3d 498, 2006-Ohio-5513, at _56. Not all the factors need to be present for the court to find that permanent custody is in the best interest of the child. In re Shaeffer *Page 17 Children (1993), 85 Ohio App.3d 683, 692. Further, this court has stated that only one of the enumerated factors needs to be resolved in favor of the award of permanent custody. In re C.H., 8th Dist. Nos. 82258 and 82852, 2003-Ohio-6854, at _34.
 {¶ 59} With respect to the best interest factors, the juvenile court stated:
 {¶ 60} "The Court further finds, based on the evidence presented and the recommendation of the Guardian ad Litem for the child and after considering all relevant factors, including but not limited to each of the [best interest] factors listed at O.R.C. 215[1].414(D)(1)-(5), that an order of Permanent Custody is in the child's best interest."
 {¶ 61} We find that the record demonstrates that the trial court considered all of the factors and properly concluded that an award of permanent custody to the agency was in M.W.'s best interest.
 {¶ 62} M.W.'s guardian ad litem opined in his report prior to trial that it was in M.W.'s best interest to be placed in the permanent custody of CCDCFS. After hearing all of the evidence at trial, he stated that he still recommended permanent custody to the agency.
 {¶ 63} Mother argues that "[a]lthough [she] may not have achieved perfection with respect to her case plan, it is clear that [she] has made and achieved substantial progress with respect to her recovery and reunification." Specifically, mother contends that the evidence presented at trial shows that she *Page 18 
regularly visited with M.W. and was "fostering an appropriate relationship with her," that she was compliant with her mental health treatment and that she was making progress in her case plan after she obtained the proper medication for her mental health issues, that her parenting ability had improved once her mental health issues were treated, and that she had not tested positive for illegal drugs "in several months."
 {¶ 64} While CCDFCS does not deny that mother regularly visited with M.W., it presented evidence that M.W. had been placed in the same foster home, with her biological sibling since birth and was bonded to the foster mother. It also presented evidence that there were no relatives suitable for placement. And again, at the time of trial, mother was homeless and staying with a friend where it was not suitable for M.W. to live.
 {¶ 65} As we also stated, mother had been discharged from two treatment programs for noncompliance. She relapsed twice in February. And throughout January, evidence showed that mother's attendance at Recovery Resources had been sporadic, despite being on her medication during that period.
 {¶ 66} Mother also complains that CCDFCS did not conduct a mental health assessment until late 2007, which hindered her ability to recover from her addiction. The record reveals, however, that it was mother who caused the delay in receiving her treatment. Mother missed two drug assessments in late August *Page 19 
and early September 2007, which could have delayed the progress of other aspects of her case plan, including a mental health assessment.
 {¶ 67} We further note that the trial court found three factors under R.C. 2151.414(E)(7)-(16) when it was determining whether M.W. should or could be placed with either parent within a reasonable period of time. See Placement With Either Parent discussion, supra. These factors also support a finding that it was in M.W.'s best interest to be placed in the permanent custody of CCDFCS. See R.C. 2151.414(D)(5).
 {¶ 68} Accordingly, mother's second assignment of error is overruled.
 {¶ 69} The judgment of the Juvenile Division of the Cuyahoga County Court of Common Pleas is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J., and KENNETH A. ROCCO, J., CONCUR.
[1] The alleged father was required to complete a number of other objectives. However, the father's case plan performance is not pertinent to this appeal.
[2] At the adjudicatory hearing, the juvenile court made sure that mother understood the rights that she was waiving by admitting to the amended complaint, but failed to ascertain whether mother understood the nature of the allegations against her and the consequences of her admission. In fact at one point, mother told the court that she did not understand what "disposition" meant. Rather than address mother's question or determine whether she understood that she could lose her parental rights at disposition, the court simply asked the attorneys, "[a]re we going to go right to disposition?" After the attorneys told the court no, the court never again addressed the disposition issue with mother. Thus, the juvenile court clearly violated Juv. R. 29 since it did not ensure that mother's admission was voluntary, intelligent, and knowing.
[3] App. R. 4(B)(5) provides: "If an appeal is permitted from a judgment or order entered in a case in which the trial court has not disposed of all claims as to all parties, other than a judgment or order entered under Civ. R. 54(B), a party may file a notice of appeal within thirty days of entry of the judgment or order appealed or the judgment or order that disposes of the remaining claims. Division (A) of this rule applies to a judgment or order entered under Civ. R. 54(B)." *Page 1