[Cite as *In re D.G.*, 2013-Ohio-3537.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 99587**

---

## IN RE: D.G.
## A Minor Child

## [Appeal by M.G., Mother]

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-11916966

**BEFORE:** Blackmon, P.J., McCormack, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 15, 2013

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 218
Northfield, Ohio 44067

**ATTORNEYS FOR APPELLEE**, **C.C.D.C.F.S.**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Tammy L. Semanco
Assistant Prosecuting Attorney
4261 Fulton Parkway
Cleveland, Ohio 44144

**Guardian Ad Litem**

Donald W. Ristity
27700 Bishop Park Drive
Suite 906
Willoughby Hills, Ohio 44092

PATRICIA ANN BLACKMON, P.J.:

{¶1} Appellant M.G.,[1] the mother of D.G., appeals from the order of the juvenile court that awarded permanent custody of her child to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). M.G. assigns the following errors for our review:

> **I. The trial court's decision to award permanent custody to CCDCFS was against the manifest weight of the evidence as it was not supported by clear and convincing evidence.**
>
> **II. The trial court erred in granting the motion for permanent custody when there was an interested individual who could provide a legally secure alternative placement option for the minor child.**

{¶2} Having reviewed the record and pertinent law, we affirm the juvenile court's decision. The apposite facts follow.

{¶3} On July 18, 2011, based upon a referral of neglect, a CCDCFS intake worker went to a home where M.G. had been staying with her infant child, D.G. (d.o.b. 06/07/2011), and the alleged father, because her utilities had been disconnected and her home was inhabitable. On arrival, the intake worker observed that the home had no windows, no doors, and was generally unsafe.

{¶4} M.G. handed the infant to the intake worker and indicated that she could not take care of the child. The intake worker requested police assistance to escort mother and child to the agency for staffing. Upon arrival at the agency, and while the intake

---

[1]The parties are referred to by their initials or title in accordance with this court's established policy regarding non-disclosure of identities in juvenile cases.

worker had taken D.G. to the second floor to discard his roach-infested clothes and car seat, M.G. left the building. M.G.'s whereabouts remained unknown until CCDCFS learned that she was incarcerated on two pending drug-possession charges.

{¶5} On July 19, 2011, D.G. was committed to the emergency temporary custody of CCDCFS. On September 22, 2011, CCDCFS filed a complaint for neglect, dependency, and for permanent custody to be vested in the agency. The complaint alleged, among other things, that M.G. requested the child's removal, alleged that she was addicted to crack cocaine, and that she was currently incarcerated pending two separate charges of drug possession.

{¶6} The complaint also alleged that M.G. had two other children that were removed from her care because of her substance-abuse challenges. One child had been committed to the permanent custody of CCDCFS, while the other had been placed in the legal custody of a relative. In addition, the complaint alleged that M.G. had not visited the infant since he had been in the temporary custody of CCDCFS.

{¶7} The complaint further alleged that Jason Collins and William Jones, two men that M.G. indicated might have fathered D.G., have failed to establish paternity, failed to support, and failed to visit the infant. The complaint alleged that both men have extensive criminal histories with periods of incarceration, and that neither have safe, suitable, or a stable home for D.G.

{¶8} On March 6, 2011, CCDCFS filed an amended complaint alleging that M.G. had been convicted of the two aforementioned drug-possession charges. The

amended complaint also alleged that M.G. had visited with her son sporadically since he had been committed to the temporary custody of CCDCFS. On April 18, 2012, at an adjudicatory hearing, M.G. admitted the allegations of the amended complaint and D.G. was adjudged neglected and dependent.

{¶9} On November 8, 2012, CCDCFS filed a motion to remove Collins and Jones as parties to the case, because the two had been ruled out as biological fathers by genetic testing. The juvenile court granted the motion. On January 7, 2013, M.G. filed a motion to have D.G. placed in the permanent custody of an interested party as an alternative to reunification with her child. Following a hearing conducted on January 10, and 11, 2013, the juvenile court granted permanent custody of D.G. to CCDCFS.

## Manifest Weight of Evidence

{¶10} In her first assigned error, M.G. argues the trial court's decision to award permanent custody to CCDCFS was against the manifest weight of the evidence and was not supported by clear and convincing evidence.

{¶11} It is well established that the right to parent one's children is a fundamental right. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28. Nevertheless, a government agency has broad authority to intervene when necessary for the child's welfare or in the interests of public safety. *Id.* at ¶ 28-29, citing R.C. 2151.01(A).

{¶12} The termination of parental rights is governed by R.C. 2151.414. *In re M.H.,* 8th Dist. Cuyahoga No. 80620, 2002-Ohio-2968, ¶ 22. R.C. 2151.414 sets forth a

two-part test courts must apply when deciding whether to award permanent custody to a public services agency. R.C. 2151.414 requires the court to find, by clear and convincing evidence, that (1) granting permanent custody of the child to the agency is in the best interest of the child under R.C. 2151.414(D), and (2) either the child (a) cannot be placed with either parent within a reasonable period of time or should not be placed with either parent if any one of the factors in R.C. 2151.414(E) are present; (b) is abandoned; (c) is orphaned and no relatives are able to take permanent custody of the child; or (d) has been in the temporary custody of one or more public or private children services agencies for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1). *In re J.M-R*, 8th Dist. Cuyahoga No. 98902, 2013-Ohio-1560, ¶ 26.

{¶13} Thus, judgments supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *In re K.M.*, 8th Dist. Cuyahoga No. 98545, 2012-Ohio-6010, ¶ 6. "Clear and convincing evidence" is evidence that "will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *In re R.M.*, 8th Dist. Cuyahoga Nos. 98065 and 98066, 2012-Ohio-4290, ¶ 12, citing *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

### First Prong: Placement With Either Parent

{¶14} The trial court's determination of whether the child cannot or should not be placed with either parent is guided by R.C. 2151.414(E). This section sets forth 16 factors that the trial court may consider in its determination. It provides that if the trial court

finds by clear and convincing evidence that any of the 16 factors exists, the court must enter a finding that the child cannot or should not be placed with either parent within a reasonable period of time. *In re D.J.*, 8th Dist. Cuyahoga No. 88646, 2007-Ohio-1974, ¶ 64. In this case, the trial court found by clear and convincing evidence that D.G. could not be placed with either parent within a reasonable time or should not be placed with either parent.[2]

{¶15} Relevant to this section, the juvenile court made the following findings:

**Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. [R.C. 2151.414(E)(1)].**

**The chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parents unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year from the time the court holds the hearing. [R.C. 2151.414(E)(2)].**

**The parent has had parental rights terminated with respect to a sibling of the child and the parent has failed to provide clear and convincing evidence to prove, that notwith-standing the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child. [R.C. 2151.414(E)(11)].**

**Any other factor the court considers relevant. R.C. 2151.414(E)(16).**

---

[2]D.G.'s father is unknown.

**{¶16}** Here, one of the 16 factors would have been sufficient. *In re M.W.*, 8th Dist. Cuyahoga No. 91539, 2009-Ohio-121, ¶ 49. It is undisputed that M.G. had two previous children involuntarily removed from her custody. This factor alone would have supported the trial court's finding that D.G. could not or should not be returned to mother within a reasonable period of time. *Id.*

**{¶17}** At the dispositional hearing lasting approximately two days, the juvenile court heard testimony from two CCDCFS case workers and their supervisor, plus M.G.'s Cuyahoga County Probation Officer, a substance-abuse case manager, and M.G.'s case manager from Mental Health Services. In addition, M.G.'s sponsor and proposed legal custodian, Denise Bogan, testified at the hearing.

**{¶18}** The testimony established that M.G. had a history of substance abuse spanning more than two decades. During this time, M.G. was only sober for a total of four years. As a result of her substance abuse, M.G. amassed three felony drug convictions, was ordered into drug treatment, and in late 2011, was involved in the adult felony drug court program.

**{¶19}** Pivotally, the evidence established that M.G. was only able to maintain sobriety while under court supervision, but would relapse upon its termination. M.G.'s court-ordered supervision ended in October 2012, less than three months before the dispositional hearing in January 2013. M.G.'s sponsor, Bogan, testified that M.G. relapsed three times in seven years.

**{¶20}** In addition, M.G. continued to have regular contact with Collins, who was alleged to be D.G.'s father, who had substance-abuse problems, and who had been offered substance-abuse treatment when he was alleged to be D.G.'s father. Collins refused to participate in any offered drug-treatment program. The evidence established that Collins continued to serve as trigger for her crack cocaine use, and M.G. even claimed Collins raped her in the early part of 2012.

**{¶21}** Further, the evidence established that M.G. has struggled to maintain mental health stability. Following her most recent release from incarceration, M.G. revealed that she had been receiving mental-health treatments for depression and mood disorder, but was concerned that her medications were not working, that she felt stressed and overwhelmed visiting D.G., maintaining sobriety, and working. After M.G.'s court-ordered supervision ended, she completed a mental-health assessment that recommended participation in a non-intensive outpatient treatment, but she refused to participate in the offered services.

**{¶22}** In light of the testimony presented at the dispositional hearing, clear and convincing evidence supports the juvenile court's finding that D.G. should not or could not be placed with M.G. within a reasonable time.

### Second Prong: Best Interest Determination

**{¶23}** When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors under R.C. 2151.414(D)(1):

**(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;**

**(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;**

**(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;**
**(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;**

**(e) Whether any of the factors in divisions (E)(7) to (11) apply in relation to the parents and child.**

{¶24} We have "consistently held that only one of the factors set forth in R.C. 2151.414(D) needs to be resolved in favor of the award of permanent custody in order for the court to terminate parental rights." *In re Z.T.*, 8th Dist. Cuyahoga No. 88009, 2007-Ohio-827, ¶ 56.

{¶25} After reviewing the record, we conclude that the trial court had sufficient, competent, and credible evidence before it to find that it was in D.G.'s best interest to be placed in permanent custody. CCDCFS presented evidence at the permanent custody hearing to establish that D.G. had a very strong bond with his foster family, with whom he had been with since he was one month old. The evidence also established that the foster parent is meeting all of D.G.'s basic needs as well as his specialized needs in light of a diagnosis of failure to thrive, and that D.G. was doing well and was developing on target.

**{¶26}** Although D.G. was not old enough to express his own wishes, his guardian ad litem, Donald Ristity, recommended it was in his best interest to be vested in CCDCFS. The guardian ad litem underscored the healthy bond D.G. had with his foster parents and emphasized the need for the child to remain in a stable and secure home. Further, the guardian ad litem expressed grave concerns regarding M.G.'s ability to remain sober given her lengthy history of substance abuse.

**{¶27}** Further, the evidence established that D.G. had been in the custody of CCDCFS for a period longer than 12 of the last 22 months. At the time of the hearing, D.G., who was then 19 months old, had been in the custody of CCDCFS and his foster parents for 18 of those months.

**{¶28}** Finally, and as previously discussed, M.G. had two other children that were permanently removed from her care. This too is another factor a court can consider when determining what is in the child's best interest. R.C. 2151.414(D)(1)(e) (whether any of the factors in (E)(7) to (11) apply; other children being placed in the permanent custody of the agency is (E)(11)).

**{¶29}** Nonetheless, M.G. argues she has remedied the conditions that caused D.G.'s removal. M.G. points out that she has completed an inpatient and an outpatient drug treatment program, obtained a sponsor, attended 12-step meetings, and is maintaining her sobriety.

**{¶30}** However, a parent's successful completion of the terms of a case plan is not dispositive on the issue of reunification. In *In re C.C.*, 187 Ohio App.3d 365, 374, 2010-Ohio-780, 932 N.E.2d 360 (8th Dist.), we explained:

> **The ultimate question under R.C. 2151.414(A)(1) is whether the parent has substantially remedied the conditions that caused the child's removal. A parent can successfully complete the terms of a case plan yet not substantially remedy the conditions that caused the children to be removed — the case plan is simply a means to a goal, but not the goal itself. Hence, the courts have held that the successful completion of case plan requirements does not preclude a grant of permanent custody to a social services agency.**

*Id.*

**{¶31}** As previously noted, in over 20 years of substance-abuse challenges, M.G. had been able to maintain sobriety for only four of those years. The evidence also established that M.G. maintained sobriety while under court-ordered supervision, but would relapse once the supervision ended. At the time of the hearing, M.G. only had three months of non-court-supervised sobriety. In addition, Bogan, who has been M.G.'s sponsor for the preceding seven years, testified that M.G. had relapsed three times in that period of time.

**{¶32}** Further, M.G. continued to have regular contact with Collins, who has a substance-abuse problem, who was offered, but refused substance-abuse treatment, and who served as a trigger for M.G.'s crack cocaine use. Thus, without discounting M.G.'s recent sobriety, the foregoing does little to soothe the juvenile court's fears that another relapse was around the corner.

**{¶33}** After reviewing the record, we conclude the termination of M.G.'s parental rights was supported by sufficient evidence and was not against the manifest weight of the evidence. Thus, we find no abuse of discretion by the trial court granting permanent custody of D.G. to CCDCFS. Accordingly, we overrule the first assigned error.

## Permanent Custody and Interested Individual

**{¶34}** In the second assigned error, M.G. argues the trial court erred in awarding permanent custody to CCDCFS instead of Bogan, an interested individual, who could have provided a legally secure placement alternative for D.G.

**{¶35}** In the previous assigned error, we concluded that the juvenile court's decision terminating M.G.'s parental rights, vesting custody in CCDCFS, and continued placement of D.G. with his foster parent, was supported by sufficient evidence and was not against the manifest weight of the evidence.

**{¶36}** Nonetheless, M.G. argues Bogan was a viable option. At the dispositional hearing, Bogan testified that she met D.G. shortly after he was born, but has not seen him since he has been in the temporary custody of CCDCFS for the past 18 months. At the hearing, when Bogan was questioned regarding best interest considerations, the following exchange took place:

> **Q.** **If [D.G.] cannot be returned to the care of his mother, do you think it would be in his best interest to remove him from the home he's known for a year and a half to be placed with someone who, unfortunately, is a stranger to him?**

> **\* \* \***

**A.** **Honestly, I can't say that I would remove him from an established home to unfamiliar territory. I can't say that I would do that.** Tr. 94.

{¶37} Here, despite M.G.'s argument, even Bogan's own testimony lends support to the juvenile court's decision that it was in D.G.'s best interest to remain in the home where he had been for 18 months following birth. Accordingly, we overrule the second assigned error.

{¶38} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, PRESIDING JUDGE

TIM McCORMACK, J., and
EILEEN T. GALLAGHER, J., CONCUR