[Cite as *In re J.S.*, 2018-Ohio-385.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105344**

## IN RE: J.S., III

## [Appeal By J.S., Jr., Father]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD 14911228

**BEFORE:** E.A. Gallagher, A.J., Blackmon, J., and Jones, J.

**RELEASED AND JOURNALIZED:** February 1, 2018

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 670218
Northfield, Ohio 44067


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY: Cheryl Rice
Assistant Prosecuting Attorney
Cuyahoga County Department of Children and Family Services
3955 Euclid Avenue, 3rd Floor
Cleveland, Ohio 44115

BY: Anthony R. Beery
Assistant Prosecuting Attorney
4261 Fulton Parkway
Cleveland, Ohio 44144

**FOR C.L.**

Jonathan N. Garver
The Brownhoist Building
4403 St. Clair Avenue
Cleveland, Ohio 44103

EILEEN A. GALLAGHER, A.J.:

{¶1} Defendant-appellant, J.S., Jr., appeals from the Cuyahoga County Juvenile Court's decision granting permanent custody of his son, J.S., III ("J.S."), to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). For the following reasons, we affirm.

**Factual and Procedural Background**

{¶2} J.S. was born on September 1, 2014. CCDCFS filed a complaint for dependency and permanent custody of J.S. on September 3, 2014. The complaint listed appellant as the "alleged father" of J.S.[1] and stated that he and J.S.'s mother lacked a stable and safe environment to provide for J.S.'s needs. The complaint further stated that appellant had previously had his parental rights for another child involuntarily terminated because he was convicted of child endangering. Appellant was also alleged to have not consistently addressed a diagnosis of bipolar anxiety disorder and depression. The juvenile court held a hearing on the matter on the same date and granted preadjudicatory emergency temporary custody to CCDCFS.

{¶3} CCDCFS's case plan was for reunification of J.S. with his parents. For appellant, the case plan included establishing a stable home, improving his parenting skills, establishing that he could meet the basic needs of J.S. and addressing mental health concerns.

---

[1]The record reflects that appellant subsequently established paternity.

**{¶4}** On March 3, 2015 the trial court granted a motion by CCDCFS to amend the complaint. The amended complaint retained the above allegations pertaining to appellant. Appellant admitted the allegations of the amended complaint on the same date and the trial court adjudicated J.S. to be a dependent child. The case proceeded to a disposition hearing on October 24, 2016 where the following facts were adduced.

**{¶5}** Dr. Amy Justice, a psychiatric evaluator for the juvenile court's diagnostic clinic testified that appellant had been diagnosed with bipolar disorder and has prescriptions of Cymbalta and Abilify for the treatment of the condition. Although appellant maintained that he consistently takes his medications, records indicated periods of noncompliance. Dr. Justice testified that this is a concern because bipolar disorder is best responsive to keeping a consistent level of medication.

**{¶6}** Appellant had previously had his parental rights terminated as to another child, K.C. Appellant indicated to Dr. Justice that he had spanked, but not beaten, K.C. In addition to the parental rights termination of that child, appellant was convicted of child endangering in 2010.

**{¶7}** Brittany Roppel, a therapist and licensed social worker with Recovery Resources, testified that she worked with appellant twice a month on his anger issues. Roppel reported that appellant had made progress in managing his anger and using coping skills.

**{¶8}** Mi-Lin Tate, the ongoing social worker assigned to the case, testified that appellant had a history of not being able to keep consistent housing and that the recent

termination of appellant's relationship with J.S.'s mother left CCDCFS with insufficient time to ascertain whether appellant would be able to maintain his current housing on his income alone.

{¶9} Tate also testified that appellant had failed to bring food to his parental visits and had trouble interacting with J.S. Tate explained, " when I say trouble, I really mean that he doesn't interact with [J.S.]. He has to be prompted to do so."   Tate testified that appellant does not want to get out of his chair to interact with J.S.   Furthermore, appellant does not interact with J.S.'s siblings and doesn't like the fact that J.S. is tightly bonded with them.   Tate stated that when J.S. plays with his siblings, appellant gets very upset.   Appellant has forced J.S.'s mother to separate J.S. from his siblings during visits which has made the visits "destructive."   Tate testified that appellant gets so upset at the interaction that he has threatened to leave the visits if J.S. engages with his siblings.

{¶10} Tate testified that appellant had not completed a parenting course during the pendency of this case and concluded that it was not in the best interests of the children to remove them from their foster home.   Tate stated that permanent custody was in the best interests of the children because they are presently in a loving and safe foster environment and J.S.'s parents are unable to consistently meet his needs.

{¶11} Arthur Falls testified that he and his wife are the foster parents of J.S. and his three biological siblings.   J.S. was placed in Fallses' custody at birth and has resided with them for two years.   Falls stated that J.S. is tightly bonded to his sister C.C. and loves playing with his brother A.C. Falls described the four siblings as a family and

testified that he loves the children and wishes to adopt them. The Falls have a four bedroom home with one and a half baths on half an acre of land with swings, a swimming pool and a playground across the street. Falls testified that he would drive the children for up to three hours, round trip to comply with the visits but two or three times none of the parents had appeared. He also testified that most of time the parents failed to meet their responsibility to provide food despite the fact that the visits occurred at dinner time.

{¶12} Finally, the guardian ad litem, Carla Golubovic, recommended that permanent custody was in the best interests of J.S. Golubovic stated that the children all have a strong bond of attachment to their foster family and one another. Golubovic did not believe that appellant would be able to provide for J.S. appropriately due to appellant's inability to fully engage in interacting with J.S., inconsistent appearances at visitations, anger issues and his prior termination of parental rights for another child. Golubovic testified that the Falls have a lovely, child-centered home and that the children are very happy.

{¶13} On December 5, 2015 the trial court issued a journal entry terminating J.S.'s predispositional emergency temporary custody, granting permanent custody of J.S. to CCDCFS and terminating appellant's parental rights pursuant to R.C. 2151.353 and 2151.414.

{¶14} After the present appeal was instituted we remanded the case to the trial court for compliance with the court's decision in *In re: R.G.*, 8th Dist. Cuyahoga No. 104434, 2016-Ohio-7897 (holding that a trial court has a duty under the Indian Child

Welfare Act ("ICWA") to direct an inquiry to the participating putative parents concerning potential Nativ e American ancestry). *See also* Bureau of Indian Affairs, Guidelines for Implementing the Indian Child Welfare Act (Dec. 2016), https://perma.cc/3TCH-8HQM (stating that State courts must ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child); 81 Fed.Reg. 96476. The trial court complied with our limited remand and issued a journal entry finding that no Native American ancestry has been established.

**Law and Analysis**

**{¶15}** In his sole assignment of error, appellant argues that the trial court's decision to award permanent custody to CCDCFS was against the manifest weight of the evidence because it was not supported by clear and convincing evidence.

**{¶16}** "All children have the right, if possible, to parenting from either [biological] or adoptive parents which provides support, care, discipline, protection and motivation." *In Re: J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In Re: Hitchcock*, 120 Ohio App.3d 88, 102, 696 N.E.2d 1090 (8th Dist.1996). Likewise, a "parent's right to raise a child is an essential and basic civil right." *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67, quoting *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). By terminating parental rights, the goal is to create "a more stable life" for dependent children and to "facilitate adoption to foster permanency for children." *In re N.B.* at ¶ 67, citing *In re Howard*, 5th Dist. Tuscarawas No. 85 A10-077, 1986 Ohio

App. LEXIS 7860, *5 (Aug. 1, 1986). However, termination of parental rights is "the family law equivalent of the death penalty in a criminal case." *In re J.B.* at ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14. It is, therefore, "an alternative [of] last resort." *In re Gill*, 8th Dist. Cuyahoga No. 79640, 2002-Ohio-3242, ¶ 21.

{¶17} An agency may obtain permanent custody of a child in two ways. *In re E.P.*, 12th Dist. Fayette Nos. CA2009-11-022 and CA2009-11-023, 2010-Ohio-2761, ¶ 22. An agency may first obtain temporary custody of the child and then file a motion for permanent custody. *See* R.C. 2151.413. Or, an agency may request permanent custody as part of its original abuse, neglect, or dependency complaint, which is what the agency did in the present case. *See* R.C. 2151.27(C) and 2151.353(A)(4).

{¶18} In cases of abuse, neglect, and dependency, a trial court may enter a disposition of permanent custody of a child if the court determines by clear and convincing evidence that the child cannot or should not be placed with either parent within a reasonable period of time and that permanent custody is in the child's best interest. *See* R.C.2151.353(A)(4) and 2151.414(D), (E).

{¶19} "Clear and convincing evidence" is that measure or degree of proof that is more than a "preponderance of the evidence," but does not rise to the level of certainty required by the "beyond a reasonable doubt" standard in criminal cases. *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 8, citing *In re Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist.1994), citing *Lansdowne v. Beacon*

*Journal Publishing Co.*, 32 Ohio St.3d 176, 180-181, 512 N.E.2d 979 (1987). It "produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re M.S.* at ¶ 18; *see also In re J.F.*, 11th Dist. Trumbull No. 2011-T-0078, 2011-Ohio-6695, ¶ 67 (a permanent custody decision "based on clear and convincing evidence requires overwhelming facts, not the mere calculation of future probabilities") (emphasis omitted), quoting *In re A.J.*, 11th Dist. Trumbull No. 2010-T-0041, 2010-Ohio-4553, ¶ 76. "An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence." *In re Jacobs*, 11th Dist. Geauga No. 99-G-2231, 2000 Ohio App. LEXIS 3859, *11 (Aug. 25, 2000), citing *In re Taylor,* 11th Dist. Ashtabula No. 97-A-0046, 1999 Ohio App. LEXIS 2620 (June 11, 1999).

**{¶20}** The trial court's determination of whether the child cannot or should not be placed with either parent is guided by R.C. 2151.414(E). This section sets forth 16 factors that the trial court may consider in its determination. It provides that if the trial court finds by clear and convincing evidence that any of the 16 factors exists, the court must enter a finding that the child cannot or should not be placed with either parent within a reasonable period of time. *In re D.J.*, 8th Dist. Cuyahoga No. 88646, 2007-Ohio-1974, ¶ 64.

**{¶21}** In this instance the trial court made the following findings pursuant to R.C. 2151.414(E)(1), (2), (4) and (11):

Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

The chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year.

The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

**{¶22}** There is no dispute that appellant had a prior parental rights termination to support the trial court's finding under R.C. 2151.414(E)(11). This factor alone would have supported the trial court's finding that J.S. could not, or should not, be returned to appellant within a reasonable period of time. *In Re J.M-R.*, 8th Dist. Cuyahoga No. 98902, 2013-Ohio-1560, ¶ 31 citing *In re M.W.*, 8th Dist. Cuyahoga No. 91539, 2009-Ohio-121, ¶ 49. The record further supports the trial court's findings under R.C. 2151.414(E)(1), (2) and (4) pertaining to the parents' failure to complete case plan services, establish their ability to provide for J.S.'s basic needs and provide an adequate home for the child. We find no error in the trial court's conclusion that J.S. cannot or

should not be placed with either parent within a reasonable period of time.

{¶23} In determining whether permanent custody is in the best interest of the child, R.C. 2151.414(D)(1) directs that the trial court "shall consider all relevant factors," including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶24} We review a trial court's determination of a child's best interest under R.C. 2151.414(D) for abuse of discretion. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. An abuse of discretion is more than a mere error of law or judgment; it implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140

(1983). While a trial court's discretion in a custody proceeding is broad, it is not absolute. "A trial court's failure to base its decision on a consideration of the best interests of the child constitutes an abuse of discretion." *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 60, citing *In re T.W.*, 8th Dist. Cuyahoga No. 85845, 2005-Ohio-5446, ¶ 27, citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 574 N.E.2d 1055 (1991).

**{¶25}** We find no abuse of discretion in the trial court's conclusion that permanent custody was in the best interests of J.S. The testimony elicited at trial detailed the close familial bond between J.S., his siblings and his foster family. As of the time of trial, J.S. had spent his entire first two years of life with his foster parents. The testimony described the positive environment the Falls have provided for J.S. and his thriving life amongst his siblings under their care. In contrast, the record as detailed above contains ample competent, credible evidence of the deficient parenting capabilities of appellant.

**{¶26}** However, we have grave concerns regarding the placement of these four children in their current foster home.

**{¶27}** The evidence in this case is scant as to the living conditions in the foster home but there is testimony that now residing in that home are foster mother, foster father, J.S. III, A.C., B.B., and C.C. (the minors subject to the custody litigation now before this court).

**{¶28}** In addition to these six people, there are tenants in the home, the number of whom is unclear and the identity of whom was not made, but total either four or five.

**{¶29}** There are also numerous animals who live in the home and perhaps two

adults, biological children of the foster parents.

{¶30} There was no testimony offered by social workers that these other persons living in the home had been investigated as to mental health issues, substance abuse issues or criminal records but the recommendation was for permanent custody with the foster family, a decision that should be revisited.

{¶31} The foster home has only one and a half bathrooms that service up to nine adults and four children.

{¶32} Appellant's sole assignment of error is overruled.

{¶33} The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

PATRICIA A. BLACKMON, J., CONCURS;
LARRY A. JONES, SR., J., CONCURS IN JUDGMENT ONLY