[Cite as *In re L.W.*, 2017-Ohio-657.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104881**

## IN RE: L.W. AND S.W.
## Minor Children

[Appeal By C.W., Father]

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 14912483 and AD 14915289

**BEFORE:** E.T. Gallagher, J., Kilbane, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** February 23, 2017

**ATTORNEY FOR APPELLANT**

John H. Lawson
The Brownhoist Building
4403 St. Clair Avenue
Cleveland, Ohio 44103


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:    Joseph C. Young
Assistant Prosecuting Attorney
Cuyahoga County Dept. Of Children and Family Services
3955 Euclid Avenue, Room 305E
Cleveland, Ohio 44115

**Guardian Ad Litem**

Amy L. Nash
1180 Winston Road
South Euclid, Ohio 44121

EILEEN T. GALLAGHER, J.:

{¶1} Appellant, C.W. ("Father"), appeals from an order of the common pleas court, juvenile division, terminating his parental rights and placing his two daughters in the permanent custody of appellee, Cuyahoga County Department of Children and Family Services ("CCDCFS" or the "agency"). Father raises the following eight assignments of error for our review:

> 1. The trial court erred in denying the appellant/Father's motion for legal custody to paternal grandmother for not submitting a signed statement of understanding pursuant to R.C. 2151.353(A)(3).
>
> 2. The trial court's decision to deny legal custody to the paternal grandmother and to grant the agency's permanent custody motion was against the manifest weight of the evidence.
>
> 3. The trial court erred and abused its discretion by permitting the agency's social worker to testify about the Alabama OTI report.
>
> 4. The Guardian Ad Litem's report and investigation failed to comply with Sup.R. 48(D) and R.C. 2151.414(C).
>
> 5. The trial court erred and abused its discretion by failing to swear the Guardian Ad Litem in before she testified or was cross-examined, in violation of Ohio Rules of Evidence 603.
>
> 6. The trial court erred and abused its discretion by permitting the Guardian Ad Litem to utilize a photograph which was never authenticated as the original per Evid.R. 1002, and never marked it as an exhibit or moved it into evidence.
>
> 7. The trial court erred by failing to mark Guardian Ad Litem's report as an exhibit, pursuant to the Ohio Rules of Evidence, Ohio case law, and Ohio Juvenile Rules which means the report should not have been considered by the trial court in rendering its decision.

8. The trial court erred by granting the agency's motion for permanent custody against Father, as the agency failed to meet its burden of either prong required under R.C. 2151.414.

{¶2} After careful review of the record and relevant case law, we vacate the juvenile court's judgment and remand for further proceedings consistent with this opinion.

## I. Procedural History

{¶3} In Cuyahoga J.C. Nos. AD14912483 and AD14915289, CCDCFS filed complaints alleging that the minor children, L.W. (date of birth November 2, 2013), and S.W. (date of birth December 8, 2014) were .  The complaints requested a disposition of temporary custody to CCDCFS and included a motion for predispositional temporary custody.  Following separate hearings, the trial court granted CCDCFS predispositional temporary custody for each child.

{¶4} Subsequently, Father and the children's mother, D.B. ("Mother"), stipulated to the complaints as amended, and the trial court issued separate entries adjudicating L.W. and S.W. dependent.  In addition, Mother and Father stipulated to the requested disposition of temporary custody and the trial court issued separate entries committing L.W. and S.W. to the temporary custody of CCDCFS.  While the children remained in the temporary custody of CCDCFS, the agency developed a case plan for the purposes of reunification.

{¶5} Following the parties' failure to comply with their respective case plans, CCDCFS filed a motion to modify L.W.'s and S.W.'s temporary custody to permanent custody.  In December 2015, Father filed a motion for legal custody to the children's paternal grandmother, S.H.

{¶6} In June 2016, the court held a dispositional hearing on the agency's motion for permanent custody and Father's motion for legal custody to S.H. At the time of the hearing, Mother was serving a six-month sentence in a Community Based Correctional Facility.

{¶7} At the hearing, CCDCFS social worker, Selina Wright ("Wright"), testified that L.W. and S.W. came into the agency's custody based on concerns with Mother and Father's parenting and whether or not it was safe for the children to return home. Wright explained that the agency's concerns arose from prior dependancy adjudications relating to Mother's two older children, D.B. and Da.B. Father is not the biological father of D.B. or Da.B.

{¶8} In this matter, Father's case plan included objectives for domestic violence, substance abuse, and parenting education. Wright testified that Father completed a substance abuse assessment and outpatient treatment in 2015, but subsequently tested positive for cocaine and marijuana use. As a result of his continuing substance abuse issues, CCDCFS sought additional assessments to determine if more appropriate treatment was required. Father, however, did not complete a further substance abuse assessment. In addition, Wright testified that Father completed domestic abuse counseling but failed to complete the parenting education component of his case plan.

{¶9} Based on her observations, Wright testified that she did not believe Father was capable of providing care for the children because "the case plan services have not been completed," and Father did not have "the housing arrangement to be able to care for them

right now." While Wright acknowleged that Father's visits with the children "go well," Wright opined that permanent custody to CCDCFS was in the best interests of the children because "neither parent has completed the case plan services and neither parent is ready to care for the children at this time." Wright further noted that L.W. and S.W. were placed with D.B. and Da.B. and that the four children have strongly bonded with each other.

{¶10} With respect to the children's paternal grandmother, S.H., Wright testified that an out-of-state investigation ("OTI") was completed at S.H.'s home in the state of Alabama. Wright testified that following the completion of the investigation, the Alabama agency did not approve S.H.'s home for placement based on concerns with her health, her mobility, and her thoughts on discipline.

{¶11} S.H. testified that she sought legal custody of L.W. and S.W. and that it was her intent to raise the children until they reached the age of majority. S.H. expressed concerns with the conclusions reached by the Alabama agency, stating that she was more than capable of caring for L.W. and S.W.

{¶12} S.H. testified that she is a registered pharmacist with degrees from Kalamazoo College and Howard University. She has been married to her husband, L.H., for 14 years and has raised five children in her home. S.H. testified that she and her husband are retired and earn retirement income. S.H. explained that she and L.H. purchased their home in Alabama with raising the children in mind and that there are a "room, clothes, and beds waiting for [L.W.] and [S.W.]." S.H. further stated that although she "walks with a limp" as a result of a past motor vehicle accident, she is

receiving physical therapy for her arthritic symptoms and is in otherwise excellent health.

{¶13} With respect to the Alabama agency's concerns with S.H.'s thoughts on discipline, S.H. testified that during a class for future foster parents, she expressed that there may be situations where it would be appropriate to "spank" a child for safety purposes. S.H., however, expressed that she felt tricked by the questions posed during the class. S.H. reiterated that she does not believe spanking is an appropriate form of discipline and that she has never spanked any of her children in the past.

{¶14} The trial court also considered the recommendations of the children's guardian ad litem (the "GAL"). In June 2016, the GAL submitted a report in which she recommended that the trial court grant CCDCFS's request for permanent custody. She indicated that the children "are very bonded to their foster family and to each other." With respect to Father, the GAL opined that Father did not benefit from the services provided in his case plan based on an unspecified incident of domestic violence and positive drug tests in August and December of 2015. The GAL further indicated that there were no relatives that she was aware of that were "willing and able to take custody of the children."

{¶15} Following S.H.'s testimony, the trial court asked the GAL for her final summation and recommendation. The GAL expressed concerns with separating all four of the children. She stated that she "might consider recommending [S.H.] get all the children," but ultimately opined that permanent custody was in the children's best interests because S.H.'s motion for legal custody was limited to L.W. and S.W.

**{¶16}** At the conclusion of the hearing, the trial court issued separate journal entries terminating Mother's and Father's parental rights and ordering L.W. and S.W. to be placed in the permanent custody of CCDCFS. In each journal entry, the trial court stated, in pertinent part:

> Upon considering the interaction and interrelationships of the child with the child's parents, siblings, and foster parents; the wishes of the child; the custodial history of the child, including whether the child has been in temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition for twelve or more months of a consecutive twenty-two month period; the child's need for a legally secure permanent placement and whether the type of placement can be achieved without a grant of permanent custody; and the report of the Guardian Ad Litem, the Court finds by clear and convincing evidence that a grant of permanent custody is in the best interests of the child and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

**{¶17}** In support of its judgment, the trial court found that L.W. and S.W. have formed a bond with the foster parents and that Mother and Father have failed to "substantially remedy the conditions causing the child[ren] to be placed outside [their] home." The court noted that Mother was incarcerated at the time of the permanent custody hearing and that Father has a "chronic chemical dependency" that is so significant that it makes him "unable to provide an adequate permanent home for the children."

**{¶18}** The court further denied Father's motion for legal custody to the children's paternal grandmother based on the Alabama OTI report and S.H.'s failure to submit and sign a Statement of Understanding for Legal Custody pursuant to R.C. 2151.353(A)(3).

**{¶19}** Father now appeals from the trial court's judgment.

## II. Law and Analysis

**{¶20}** On appeal, Father collectively argues the trial court's decision to deny legal custody to S.H. and to grant the agency's permanent custody motion was not clearly and convincingly supported by the evidence. For ease of discussion, we will address Father's assignments of error out of order and together where appropriate.

**{¶21}** We take our responsibility in reviewing cases involving the termination of parental rights and the award of permanent custody very seriously. "'All children have the right, if possible, to parenting from either [biological] or adoptive parents which provides support, care, discipline, protection and motivation.'" *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hitchcock*, 120 Ohio App.3d 88, 102, 696 N.E.2d 1090 (8th Dist.1996). Likewise, a "'parent's right to raise a child is an essential and basic civil right.'" *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67, quoting *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). By terminating parental rights, the goal is to create "a more stable life" for dependent children and to "facilitate adoption to foster permanency for children." *In re N.B.* at ¶ 67, citing *In re Howard*, 5th Dist. Tuscarawas No. 85 A10-077, 1986 Ohio App. LEXIS 7860, 5 (Aug. 1, 1986). However, termination of parental rights is "'the family law equivalent of the death penalty in a criminal case.'" *In re J.B.*, at ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14. It is, therefore, "an alternative [of] last resort." *In re Gill*, 8th Dist. Cuyahoga No. 79640, 2002-Ohio-3242, ¶ 21.

**{¶22}** Initially, Father argues the trial court failed to determine whether or not S.H.

was a "suitable" relative pursuant to R.C. 2151.412(H)(2)[1] before granting permanent custody to CCDCFS. Contrary to Father's position, however, R.C. 2151.412(H)(2) applies only to case plans, not custody determinations. *In re A.R.*, 8th Dist. Cuyahoga No. 103450, 2016-Ohio-1229, ¶ 21, citing *In re C.H.*, 8th Dist. Cuyahoga No. 103171, 2016-Ohio-26, ¶ 26. While a trial court "must find by clear and convincing evidence that the parents are not suitable placement options, the court is not required to invoke the same standard with regard to a grandparent." *In re A.D.*, 8th Dist. Cuyahoga No. 85648, 2005-Ohio-5441, ¶ 12.

**{¶23}** To the extent Father argues the trial court erred by failing to place the children in the legal custody of S.H., we note that S.H. is not a party to this appeal. Generally, "[a] parent has no standing to assert that the court abused its discretion by failing to give the [paternal grandmother] legal custody; rather, the challenge is limited to whether the court's decision to terminate parental rights was proper." *In re S.G.*, 3d Dist.

---

[1] R.C. 2151.412(H)(2) provides in pertinent part:

(H) In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be guided by the following general priorities:

* * *

(2) If both parents of the child have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child even with reasonable assistance, or have a detrimental effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family[.]

Defiance No. 4-16-13, 2016-Ohio-8403, ¶ 52, citing *In re Pittman*, 9th Dist. Summit No. 20894, 2002-Ohio-2208, ¶ 70. Thus, Father's challenge to the trial court's judgment granting CCDCFS permanent custody in this case is limited to whether the trial court improperly terminated his parental rights.

**{¶24}** With these principles in mind, we now review the trial court's judgment awarding CCDCFS permanent custody and terminating Father's parental rights.

### A. Standard for Terminating Parental Rights and Awarding Permanent Custody to CCDCFS

**{¶25}** "An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence." *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, at ¶ 48, citing *In re M.J.*, 8th Dist. Cuyahoga No. 100071, 2013-Ohio-5440, ¶ 24. "'Clear and convincing evidence' is evidence that 'will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" *In re T.B.*, 8th Dist. Cuyahoga No. 99931, 2014-Ohio-2051, ¶ 28, quoting *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

**{¶26}** R.C. 2151.414 provides guidelines a trial court must follow in deciding a motion for permanent custody. The statute sets forth a two-prong analysis to be applied by a juvenile court in adjudicating a motion for permanent custody. R.C. 2151.414(B).

**{¶27}** First, R.C. 2151.414 authorizes the juvenile court to grant permanent custody of a child to the public agency if, after a hearing, the court determines, by clear and convincing evidence, that any of these four factors apply (a) the child is not abandoned or

orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period.   R.C. 2151.414(B)(1)(a)-(d).

{¶28} Only one of the four factors must be present for the first prong of the permanent custody analysis to be satisfied.   *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, at ¶ 72.   When any of these four factors exists, the trial court proceeds to analyze whether, by clear and convincing evidence, it is in the best interests of the child to grant permanent custody to    the agency under R.C. 2151.414(D).

### 1. First Prong: R.C. 2151.414(B)(1) Factors

{¶29} In this case, the trial court found that R.C. 2151.414(B)(1) was satisfied because L.W. and S.W. could not be placed with either parent within a reasonable period of time or should not be placed with either parent. R.C. 2151.414(B)(1)(a).

{¶30} In determining whether a child cannot be placed with his or her parents within a reasonable period of time or should not be placed with his or her parents, courts look to R.C. 2151.414(E).   Pursuant to R.C. 2151.414(E), if the trial court determines, by clear and convincing evidence, that one or more of factors specified in R.C. 2151.414(E)(1) through (16) exists as to each of the child's parents, then the trial court "shall enter a finding that the child cannot be placed with either parent within a reasonable

time or should not be placed with either parent." *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, ¶ 42.   In this case, the trial court found, among other factors, that R.C. 2151.414(E)(1) applied to both Mother and Father.

**{¶31}** R.C. 2151.414(E)(1) states:

> Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the  parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.   In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

**{¶32}** Limiting our review of the circumstances involving Father, we find the record contains ample evidence to support the trial court's finding that Father "has failed continuously and repeatedly to substantially remedy" the conditions that caused L.W. and S.W. to be placed outside their home.   At the permanent custody hearing, social worker Wright testified that CCDCFS provided Father with a case plan that was designed to assist him in remedying the conditions that caused the children to be placed with the agency. Specifically, Father's case plan included objectives for substance abuse assessment and treatment, domestic violence counseling, and parenting education.   Although Father substantially completed programs addressing some of these issues, the record reflects that he failed to complete the parenting education component of his case plan and stopped participating in his substance abuse assessment and treatment after he tested positive for

cocaine and marijuana. Wright testified that she did not believe Father was capable of providing care for the children based on his failure to complete his case plan services and his inability to obtain a suitable housing arrangement. The GAL agreed with Wright, opining that Father had not benefitted from his case plan.

**{¶33}** Accordingly, the record clearly and convincingly supports the trial court's determination that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent.

### 2. Second Prong: Best Interest of the Child Analysis

**{¶34}** Once the juvenile court ascertains that one of the four factors listed in R.C. 2151.414(B)(1) is present, then the court proceeds to an analysis of the child's best interest.

**{¶35}** We review a trial court's determination of a child's best interest under R.C. 2151.414(D) for abuse of discretion. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). While a trial court's discretion in a custody proceeding is broad, it is not absolute. "A trial court's failure to base its decision on a consideration of the best interests of the child constitutes an abuse of discretion." *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, at ¶ 60, citing *In re T.W.*, 8th Dist. Cuyahoga No. 85845, 2005-Ohio-5446, ¶ 27, citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 574 N.E.2d 1055 (1991).

**{¶36}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D)(1) mandates that the juvenile court must consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶37}** "A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security." *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 11, citing *In re Adoption of Ridenour*, at 324. "There is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. This court has stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. *In re Moore*, 8th Dist. Cuyahoga No. 76942, 2000 Ohio App. LEXIS 3958 (Aug. 31, 2000), citing *In re Shaeffer Children,* 85 Ohio App.3d 683, 621 N.E.2d 426 (3d Dist.1993).

**{¶38}** After careful consideration of the testimony presented at the permanent custody hearing and the R.C. 2151.414(D)(1) factors relied upon by the trial court, this court is obligated to reach the necessary, albeit difficult, conclusion that deficiencies in this record have precluded this court from conducting a meaningful review of the trial court's best interests determination. In this case, the trial court's best interests determination relied extensively on L.W. and S.W.'s bond with their two older brothers and the Alabama OTI report that did not approve S.H.'s home for placement. Significantly, while Wright testified to the conclusions reached by the Alabama agency, the OTI report was not made part of the record, and the testimony going to the report's findings were vague in most instances and incomplete in others. In our view, the failure to include the report is significant given its relevance to the court's evaluation of R.C. 2151.414(D)(1)(d) and S.H.'s testimony establishing that she is both willing and able to provide L.W. and S.W. with a safe and loving home.

**{¶39}** We recognize that "[t]he willingness of a relative to care for a child does not alter what a court considers in determining whether to grant permanent custody." *M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, at ¶ 11. However, under the specific circumstances presented in this case, we find the limitations of this record cannot be ignored. Critically, this court is unable to review an important piece of evidence supporting the trial court's consideration of whether legally secure placement could be achieved without a grant of permanent custody to the agency. Given the magnitude of a decision terminating parental rights, we are unwilling to attempt a review

of the trial court's judgment without a complete and thorough understanding of all of the evidence relied on by the court.

{¶40} Based on the foregoing, we vacate the trial court's judgment awarding permanent custody of each child to CCDCFS and terminating Father's parental rights, and remand for a new permanent custody hearing. Because the GAL report states that "there are no relatives that I am aware of that are willing and able to take custody of any of the children," it is our hope on remand that the GAL amends her report following an adequate investigation pursuant to R.C. 2151.281 and Sup.R. 48 to reflect all "relevant information" relating to S.H.

{¶41} Father's eighth assignment of error is sustained. Father's remaining assignments of error are rendered moot by our resolution of his eighth assignment of error.

{¶42} Judgment reversed and remanded.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

MARY EILEEN KILBANE, P.J., and
TIM McCORMACK, J., CONCUR