Christina Joliat, P.O. Box 391531, Solon, Ohio 44139, ATTORNEY FOR APPELLANT
Michael C. O'Malley, Cuyahoga County Prosecutor, By: Colleen R. Cassidy Ulrich, County Department of Human Services, Assistant County Prosecutor, 3955 Euclid Avenue, Cleveland, Ohio 44115, ATTORNEYS FOR APPELLEES
Cheryl Rice, Assistant County Prosecutor, 8111 Quincy Avenue, Room 440, Cleveland, Ohio 44104, For C.C.D.C.F.S.
Candace L. Brown, P.O. Box 286, Medina, Ohio 44258, Guardian Ad Litem For Minor Child
Michael S. Weiss, 602 Rockefeller Building, 614 West Superior Avenue, Cleveland, Ohio 44113, For Johnny Litt, Father
BEFORE: Blackmon, J., E.T. Gallagher, P.J., and Jones, J.
JOURNAL ENTRY AND OPINION
PATRICIA ANN BLACKMON, J.:
{¶ 1} Appellant, B.W. (referred to herein as "appellant"), mother of M.L., appeals *928 from the order of the juvenile court that awarded permanent custody of M.L. to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). For the reasons set forth below, we affirm.
{¶ 2} M.L. was born in November 2015, while appellant was incarcerated following her convictions for child endangering and domestic violence. Several days after M.L. was born, CCDCFS filed a dependency complaint, seeking predispositional temporary custody. In relevant part, CCDCFS alleged that two of appellant's other children were also in the custody of CCDCFS, and that M.L.'s alleged father did not establish paternity, has another child who is not in his care, and has not completed case plan services for this child.[1]
{¶ 3} The trial court awarded temporary custody of M.L. to CCDCFS. Appellant requested that the children be placed with the paternal grandmother but her home was unsuitable. No other relatives were available for placement, so M.L. was placed in foster care. CCDCFS subsequently implemented a case plan requiring appellant to show that she could meet M.L.'s basic needs, and to attend anger management classes, counseling, and parenting classes. A guardian ad litem ("GAL") was appointed for the child.
{¶ 4} Following a hearing on March 7, 2016, the trial court determined that M.L. is a dependent child. After subsequent pretrials, the court also noted that appellant "has been released from incarceration and has failed to appear for * * * hearing."
{¶ 5} On July 5, 2016, CCDCFS filed a complaint for permanent custody of M.L., alleging that appellant has not completed recommended services, has not benefitted from anger management and domestic violence education, did not have stable housing, and could not provide for the basic needs of M.L. CCDCFS further alleged that paternity had been established, but father had not engaged in any case plan services, and only visited with M.L. twice.
{¶ 6} On December 29, 2016, appellant filed a motion requesting that her maternal cousin, A.M., be appointed legal custodial for M.L. After speaking with A.M. on several occasions and visiting her home twice, the GAL issued a report that included the following:
[A.M.] is nineteen years old. She has a daughter, who is seven months old. When the [GAL] first visited [A.M.] in January 2017, her three bedroom apartment was nearly empty. She had one piece of furniture, a blow-up mattress in her bedroom. Social Worker Olivia Goins-Jordan helped [A.M.] obtain some furniture for her home.
When [GAL] visited the home again in March 2017, [A.M.] had only a couch and a chair in her living room, as well as a toddler bed. [A.M.] was only working sporadically as a home health aide. She said at the time that she was working part-time and was in the process of finding another job. At that time, the [GAL] read through [A.M.'s] lease to her apartment. Her lease was obtained in October 2016 through the Violence Against Women and Department of Justice Reauthorization Act of 2005. She initially had a female roommate that was later taken off the lease. The [GAL] asked [A.M.] whether she was a victim of domestic violence and generally asked her about how she obtained her housing. [A.M.] denied being a victim of domestic violence and did not offer any further details about her past or background.
*929 Because of [A.M.'s] age, the fact that she has her own daughter to care for, and [A.M.'s] limited work history and stability, the [GAL] has concerns about [A.M.'s] ability to additionally provide for M.L. No other relatives have been identified who are willing and able to care for M.L.
M.L. has remained placed in the same foster home since she was born. She is bonded with her foster parents and has become integrated into their family. The foster parents are interested in adopting M.L.
Based upon the [GAL's] investigation, the [GAL] finds that it is in the best interests of M.L. that CCDCFS be granted permanent custody of her. Although [appellant] has made some progress in alleviating the conditions that caused removal of M.L., by participating in case plan services, [Appellant] does not have furniture or appliances at her current home. [appellant] is unable at this time to provide for M.L.'s basic needs, and it is unclear if or when [appellant] would be able to do so.
{¶ 7} At trial, appellant's former social worker, Catherine Borden ("Borden"), testified that appellant's convictions for child endangering and domestic violence stem from an incident of physical abuse upon M.L.'s brother and he has been removed from appellant's care. M.L.'s sister was removed from the home due to neglect of her medical issues. Borden testified that appellant is currently on parole. Appellant had completed some services as required on her case plan, but did not benefit from them. Appellant does not have her own residence, and has lived with various friends and relatives. With regard to the father, Borden testified that he had established paternity, but he informed Borden that he did not intend to engage in case plan services for M.L. and would instead focus on raising his other children. He rarely visits M.L.
{¶ 8} Appellant's current social worker, Olivia Goins-Jordan ("Goins-Jordan"), testified that as of the time of trial, appellant lived with her fiancé, but their apartment did not have a stove or refrigerator. Appellant indicated that her fiancé's relatives lived upstairs and she had permission to use their appliances. Goins-Jordan also believed that appliances could be obtained through a community collaborative organization. Goins-Jordan opined that appellant is more stable than she had been previously and is appropriate during her visits with M.L. Goins-Jordan also noted that appellant has two part-time jobs and was looking for another job.
{¶ 9} Goins-Jordan testified that M.L. is well-bonded to her foster family, and that her needs were met in that placement. The father did not respond to Goins-Jordan's repeated efforts to contact him, and no other family members were approved for placement.
{¶ 10} With regard to A.M.'s suitability for custody, Goins-Jordan testified that she had been to A.M.'s apartment and found it suitable, and a bedroom was set up for M.L. A.M. is employed and has no criminal history, but she is young and has her own infant.
{¶ 11} A.M. testified that she was recently hired at Wal-Mart and also occasionally works as a home health aide. She lives in subsidized housing. She has visited with M.L. a few times. She stated that she was not willing to facilitate M.L.'s visitation with the father.
{¶ 12} Appellant testified regarding her living conditions. She stated that for the past seven months, she has been living with her fiancé. Their apartment does not have appliances, but appliances are available for her use in an upstairs apartment.
*930 Appellant works 16 hours per week at Burger King and was also hired at another restaurant that has not yet opened. Appellant visits M.L. once a week. She stated that she has completed parenting classes, but she admitted that during a visitation, M.L. fell off a couch and bumped her head while appellant was plugging in her cell phone.
{¶ 13} The GAL testified that she has ongoing concerns about appellant's ability to meet M.L.'s basic needs, and that she does not believe that placement with A.M. is appropriate. The GAL stated that M.L. is in need of a permanent home and that it is in her best interest to award CCDCFS permanent custody.
{¶ 14} On June 23, 2017, the trial court concluded that the allegations of the complaint had been proven by clear and convincing evidence and awarded permanent custody of M.L. to CCDCFS. In relevant part, the court noted:
12. [Appellant's other] children, I.W. and A.W. were committed to the permanent custody of [CCDCFS] on January 15, 2016.
* * *
14. [M.L.] was adjudicated dependent on March 9, 2016 and committed to the temporary custody of [CCDCFS] on March 17, 2016.
* * *
16. [Appellant] did not consistently engage in case plan services until at least November, 2016, even though she was released from prison in February, 2016.
17. * * * Borden testified that she saw no difference in [appellant] from before she went to prison to after she was released.
18. * * * M.L. * * * fell off of the couch and hit her head due to [appellant's] lack of supervision during a visit. * * *
19. * * * [Appellant] was not able to demonstrate that she could meet the basic needs of the child.
20. * * * [There are] no appliances in [Appellant's] home.
21. [Appellant] stated that she was working only 16-17 hours a week at minimum wage. [Appellant] did not work consistently during the life of the case.
* * *
23. Father expressed that he was not willing to engage in case plan services to be unified with M.L.
* * *
26. [A.M.] is nineteen years of age and has her own six month old child for whom she is responsible.
27. [A.M.] testified that she works at Wal-Mart[,] and as a home health aide; however she continued to state that she has only been working at Wal-Mart for about a month and does not have regular work as a home health aide. * * *
28. At the time of the hearing, [A.M.] lived in subsidized housing for which she paid no rent.
29. [A.M.] testified that she would not be willing to facilitate visitation with the child's father, should he request visitation, despite expressing her understanding that parents retain residual rights when custody is granted to another individual.
30. [A.M.] does not have a significant bond with the child as she has only visited with her a few times during [appellant's] visitation.
31. There is not an appropriate relative available for placement or custody of the child.
{¶ 15} The trial court concluded that M.L. could not be placed with either parent within a reasonable time, or should not be placed with either parent, and the grant *931 of permanent custody to the agency is in M.L.'s best interest.
{¶ 16} Within her sole assigned error, appellant asserts that the trial court erred in awarding permanent custody of M.L. to CCDCFS, and in denying the motion to award legal custody of the child to A.M.
Award of Permanent Custody
{¶ 17} "An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence." In re N.B. , 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, 2015 WL 406036, ¶ 48 ; In re M.J. , 8th Dist. Cuyahoga No. 100071, 2013-Ohio-5440, 2013 WL 6572862, ¶ 24. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." Cross v. Ledford , 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). A reviewing court is required to examine the record to determine whether the trier of fact had sufficient evidence to satisfy the clear and convincing standard. In re T.S. , 8th Dist. Cuyahoga No. 92816, 2009-Ohio-5496, 2009 WL 3321019, ¶ 24.
{¶ 18} In order to terminate parental rights and grant permanent custody to CCDCFS, the court must apply the two-prong test set forth in R.C. 2151.414. First, the court must find by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency, and one of the factors listed in R.C. 2151.414(B)(1) has been met. The factors for the first part of the test under R.C. 2151.414(B)(1) include the following: (a) the child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent; (b) the child is abandoned; (c) the child is orphaned and no relatives are able to take permanent custody of the child; or (d) the child has been in the temporary custody of one or more public or private children services agencies for 12 or more months of a consecutive 22-month period.
{¶ 19} Under the second part of the test, the court must determine by clear and convincing evidence, that permanent custody is in the best interest of the child in accordance with the factors listed in R.C. 2151.414(D). In re J.H. , 8th Dist. Cuyahoga No. 105078, 2017-Ohio-7070, 2017 WL 3311036, ¶ 39 ; In re J.M. , 8th Dist. Cuyahoga No. 104030, 2016-Ohio-7307, 2016 WL 5940454, ¶ 50. These factors include the child's interactions and relationships, the wishes of the child, the custodial history of the child, the child's need for a legally secure permanent placement and whether that can be achieved without a grant of permanent custody to the CCDCFS, and, in the event that the court determines that the child cannot be placed within either parent within a reasonable time, whether any of the following R.C. 2151.414(E) additional factors apply:
(1) Following the placement of the child outside the home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
*932 * * *
(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under * * * 2929.25 * * * and the child or a sibling of the child was a victim of the offense;
* * *
(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code * * *.
* * *
(16) Any other factor the court considers relevant.
{¶ 20} The existence of one factor alone will support a finding that a child cannot be reunified with the parents within a reasonable time. See In re William S. , 75 Ohio St.3d 95, 99, 661 N.E.2d 738 (1996) ; In re C.F. , 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 50.
{¶ 21} In this case, with regard to the first prong of the two-prong test, the trial court found by clear and convincing evidence that M.L. had been in temporary custody for approximately 18 months preceding the hearing. The court also determined that M.L. cannot be placed with either parent within a reasonable time or should not be placed with the parents. Secondly, the court concluded that the award of permanent custody to CCDCFS is in M.L.'s best interest.
{¶ 22} The record contains clear and convincing evidence that supports the court's determination. It is undisputed that two of appellant's other children are in the permanent custody of CCDCFS. Additionally, appellant has convictions for domestic violence under R.C. 2919.25 and child endangering under R.C. 2919.22, and one of appellant's other children was the victim of those offenses. These factors alone would have supported the trial court's finding that M.L. cannot be placed with the parents within a reasonable period of time or should not be placed with them. In re J.H. , 2017-Ohio-7070, ¶ 22 ; In re J.M. , 2016-Ohio-7307, ¶ 52. R.C. 2151.414(E)(11) ; In re D.G. , 8th Dist. Cuyahoga No. 99587, 2013-Ohio-3537, 2013 WL 4244883, ¶ 16 ; In re M.W. , 8th Dist. Cuyahoga No. 91539, 2009-Ohio-121, 2009 WL 94547, ¶ 49. Further, where this factor is established, the burden is then on the parent to provide clear and convincing evidence to prove that he or she can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child. In re E.A. , 9th Dist. Medina No. 12CA0059-M, 2012-Ohio-5925, 2012 WL 6561189, ¶ 14. However, appellant remained unable to provide such an environment by the date of trial. Moreover, in light of all the evidence, the trial court properly found by clear and convincing evidence, that the award of permanent custody to CCDCFS was in M.L.'s best interest in light of appellant's offenses and her lack of suitable housing, and appellant's prior termination of parental rights pertaining to M.L.'s siblings.
Appellant's Motion for Legal Custody to A.M.
{¶ 23} Appellant next argues that the record does not support the termination *933 of parental rights because CCDCFS did not adequately pursue the issue of granting legal custody of the child to A.M.
{¶ 24} We note that the juvenile court is not required to determine by clear and convincing evidence that "termination of appellant's parental rights was not only a necessary option, but also the only option" or that "no suitable relative was available for placement." In re Schaefer , 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 63. Therefore, while a trial court "must find by clear and convincing evidence that the parents are not suitable placement options, the court is not required to invoke the same standard with regard to a [another family member]." In re L.W. , 8th Dist. Cuyahoga No. 104881, 2017-Ohio-657, 2017 WL 712808, ¶ 22, quoting In re A.D. , 8th Dist. Cuyahoga No. 85648, 2005-Ohio-5441, 2005 WL 2600638, ¶ 12. Further, the trial court is not required to consider placing children with a relative prior to granting permanent custody to CCDCFS, and the willingness of a relative to care for a child does not alter what the court must consider in determining permanent custody. In re L.W. at ¶ 38-39. In re L.S. , citing In re Benavides , 8th Dist. Cuyahoga No. 78204, 2001 WL 470177, 2001 Ohio App. LEXIS 2002 (May 3, 2001) ; In re Patterson , 134 Ohio App.3d 119, 129, 730 N.E.2d 439 (9th Dist. 1999).
{¶ 25} Under R.C. 2151.353(A)(3), a court may make an award of legal custody of the children to a person who, prior to the dispositional hearing, files a motion requesting legal custody of the child and signs a statement of understanding for legal custody acknowledging that: (1) it is the person's intent to become legal custodian; (2) the person understands that legal custody is permanent in nature; (3) the person understands that the parents have residual rights, including the right of visitation; and (4) the person must appear in court to affirm these intentions and answer any questions. The trial court is then charged with determining whether the award of legal custody is in the child's best interest, considering all relevant factors. For guidance, the court may look to the factors listed under R.C. 2151.414(D) pertaining to permanent custody cases. In re B.D. , 8th Dist. Cuyahoga No. 105650, 2017-Ohio-8663,, 2017 WL 5626220 ¶ 26 ; In re M.B. , 8th Dist. Cuyahoga No. 105168, 2017-Ohio-7481, 2017 WL 3912794, ¶ 11.
{¶ 26} In this matter, the GAL noted that A.M.'s subsidized apartment was leased through the Violence Against Women and Department of Justice Reauthorization Act of 2005, and that A.M. initially had a female roommate. A.M. denied that she was a victim of domestic violence, but did not offer any further details about her past. Noting A.M.'s young age, limited furnishings, extremely limited work history, and her responsibility in caring for her own young child, the GAL expressed concerns about A.M.'s ability to provide for M.L. Likewise, the trial court noted that A.M. had been working at Wal-Mart for about a month and does not have regular employment in her other job as a home health aide. The court also observed that A.M. would not be willing to facilitate visitation with M.L.'s father, contrary to the provisions of the memorandum of understanding required by R.C. 2151.353. Moreover, the court found that A.M. does not have a significant bond with the child because she has only visited with her a few times during appellant's visitation.
{¶ 27} In accordance with all of the foregoing, a review of the evidence supports the trial court's determination that the award of legal custody to A.M. would not be in M.L.'s best interest, and supports the court's denial of appellant's motion to have legal custody of the child awarded to A.M. Further, the court did not err, during *934 consideration of whether M.L.'s need for a legally secure permanent placement could be achieved without a grant of permanent custody to the agency, when it concluded that placement with A.M. would not be appropriate.
{¶ 28} In accordance with the foregoing, the evidence of record clearly and convincingly supports the award of permanent custody to the CCDCFS.
{¶ 29} The assigned error is overruled.
{¶ 30} Judgment affirmed.
EILEEN T. GALLAGHER, P.J., and LARRY A. JONES, SR., J., CONCUR

During the pendency of this matter, CCDCFS was awarded permanent custody of appellant's two other children.