[Cite as *In re J.F.*, 2024-Ohio-3407.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

| | | |
|---|---|---|
| IN RE J.F., ET AL. | : | |
| | : | No. 113822 |
| Minor Children | : | |
| | : | |
| [Appeal by Mother] | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 5, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-21-905611 and AD-21-905612

---

***Appearances:***

Rosel C. Hurley III, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellees*.

EMANUELLA D. GROVES, J.:

{¶ 1} Appellant-Mother ("Mother") appeals the juvenile court's decisions
granting the Cuyahoga County Division of Children and Family Services'
("CCDCFS") motions to modify temporary custody to permanent custody of

Mother's children, J.F. (d.o.b. 07/10/15) and D.F. (d.o.b. 02/23/17) (collectively "Children").[1]  Upon review, we affirm the trial court's decisions.

## I.    Facts and Procedural History

{¶ 2} CCDCFS filed a complaint for neglect, dependency, and temporary custody of Children in July 2021 along with a motion for predispositional temporary custody.  Emergency temporary custody was granted, and Children were subsequently adjudicated neglected and dependent and committed to the temporary custody of CCDCFS in October 2021.  Temporary custody was extended twice, and in April 2023, CCDCFS filed motions to modify temporary custody to permanent custody.  Children's guardian ad litem ("GAL") filed reports in November 2023 advising that permanent custody was in Children's best interest and recommending that they be committed to CCDCFS's permanent custody.  After numerous continuances and further extensions of temporary custody, an evidentiary hearing was held on March 21, 2024.

{¶ 3} In opening statements, CCDCFS advised that Mother was unavailable to care for Children because she was currently incarcerated and was expected to remain incarcerated until 2027.  Mother's counsel requested the trial court consider giving Mother additional time to leave prison, continue services, and reunify with her children because she was able to file for judicial release in August.

---

[1] This appeal addresses the parental rights and responsibilities of Mother only. To date, no appeal had been filed by D.F. Jr., the father of J.F. and the alleged father of D.F.

**{¶ 4}** Gohnnie Jackson ("Case Worker"), a CCDCFS extended service case worker assigned to the Children's cases, testified that Children were previously in the custody of Mother, however, there were concerns regarding Children's supervision and the parents' homelessness, pending criminal charges, and domestic violence issues. Case Worker advised that Children came into CCDCFS's emergency custody and were later adjudicated and committed to CCDCFS's temporary custody. Case Worker explained that a case plan was developed with a permanency plan of reunification and Mother was referred to domestic violence and parenting classes and supportive visitation, all of which she completed. Case Worker testified that CCDCFS further assisted Mother with obtaining a Section 8 housing voucher, but Mother was unable to establish housing prior to her incarceration. Case Worker acknowledged that Mother completed several case plan services; her visits with Children were going well, despite a few issues; and Mother and Children loved each other and were bonded. However, Case Worker explained that there was a current barrier to reunification: Mother was incarcerated until 2027 on felonious assault and drug possession charges.

**{¶ 5}** Case Worker advised that Children were placed in foster homes before being placed with their paternal grandmother ("Grandmother") in January 2023. Case worker expressed that Children were "doing well, overall" in their current placement with Grandmother. (03/21/24, tr. 27.) Case Worker explained that Children had a bond with Grandmother and were happy with their placement. Case Worker further testified that Grandmother was hands-on and actively involved:

Grandmother attended events, worked with, and volunteered at Children's school, transported Children to counseling and medical appointments, and ensured their needs were met. Case Worker stated that Grandmother wanted to go forward with permanent custody so that she could adopt Children.

{¶ 6} Case Worker advised that if permanent custody were to be granted to CCDCFS, Children would remain in their current placement with Grandmother. Case Worker testified that based on the totality of the circumstances, she believed it was not in Children's best interest to be returned to either parent at that time. Case Worker advised that Children needed a legally secure permanent placement and that granting permanent custody to CCDCFS would facilitate that permanency, stating, "[C]hildren have been in [CCDCFS] custody since July 2021. They are in need of permanency. They have been through a lot of transition. They need a stable environment and they are in need of permanency at this time that the parents are unable to provide." *Id.* at 33.

{¶ 7} After hearing the testimony offered by Case Worker, accepting the evidence offered by CCDCFS,[2] and receiving the docketed copy of GAL's report, the trial court requested the GAL's final summation and recommendation. GAL stated:

> I understand mom has applied for judicial release. I'm sure her attorney has indicated to her that just because she's making an

---

[2] CCDCFS admitted the following exhibits at the hearing: certified copies of the magistrate's orders granting emergency temporary custody to CCDCFS; the juvenile court's decisions adjudicating the Children neglected and dependent and committing the Children to the temporary custody of CCDCFS; and sentencing judgment entries from four of Mother's criminal cases, including her most recent felonious assault conviction, which imposed a four-year prison sentence running concurrent with prison time sentenced in the three other cases.

application, does not mean it's going to be granted. I wish her the best. I hope she — does that judicial release does get granted. But in terms of the best interest [sic] of the children, it is my belief that it is in their best interest for [CCDCFS's] motion to be granted. I believe that the children will — will continue to do well in the care of the paternal grandmother, who has gone out of her way to meet the needs of these children.

*Id.* at 47.

{¶ 8} On March 26, 2024, the trial court issued decisions[3] with the following factual findings based on the testimony and evidence presented at the hearing:

- Children were not abandoned or orphaned but have been in temporary custody of a public children services agency or private child placing agency for twelve or more months of a consecutive 22-month period.

- Despite reasonable case planning and diligent efforts made by CCDCFS to assist Children's parents in remedying the problems that caused Children to be placed outside of the home, they failed continuously and repeatedly to substantially remedy those conditions.

- Mother was incarcerated and would not be available to care for the Children for at least 18 months after the filing of the motions for permanent custody or the dispositional hearing.

- Children were placed with the Children's paternal grandmother.

- Children have been in CCDCFS's custody for two years and no longer qualify for temporary custody.

- One or more factors of R.C. 2151.414(E) existed and Children cannot be placed with one of their parents within a reasonable period of time or should not be placed with either parent.

- Children do not meet the requirement for a planned permanent living arrangement and no relative or other interested person had filed or was identified in a motion for legal custody prior to the dispositional hearing.

---

[3] Two judgment entries were issued, one in each of Children's cases. The decisions are identical except for issues of paternity.

- Children's return to the home of Mother would be contrary to their best interests.

- Reasonable efforts were made and services were provided to prevent removal of the Children, return the Children, and finalize the permanency plans of reunification, however, they were unsuccessful.

(Mar. 26, 2024 judgment entry.) In granting CCDCFS's motions to modify temporary custody to permanent custody, ordering that Children be committed to the permanent custody of CCDCFS, and terminating the parental rights and responsibilities of Mother and Children's father, the trial court stated:

> Upon considering the interaction and interrelationship of the [Children] with the [Children's] parents, siblings, relatives, and foster parents; wishes of the [Children]; the custodial history of the [Children], including whether the [Children have] been in temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition for twelve or more months of a consecutive twenty-two month period; the [Children's] need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and the report of the Guardian ad Litem, the Court finds by clear and convincing evidence that a grant of permanent custody is in the best interests of the [Children] and the [Children] cannot be placed with one of the [Children's] parents within a reasonable time or should not be placed with either parent.

*Id.*

{¶ 9} Mother appealed the trial court's March 26, 2024 decisions, raising a single assignment of error for review.

**Assignment of Error**

The trial court erred in awarding permanent custody to CCDCFS as appell[ee] failed to show by clear and convincing evidence that adequate grounds existed for a grant of permanent custody and therefore such a decision was contrary to the manifest weight of the evidence.

## II. Law and Analysis

### A. Standard of Review

{¶ 10} The Ohio Supreme Court recently clarified that sufficiency of the evidence and/or manifest weight of the evidence are the proper appellate standards of review to apply in cases involving a juvenile court's decision under R.C. 2151.414 to award permanent custody of a child and terminate parental rights, depending on the nature of the arguments presented by the parties. *In re Z.C.*, 2023-Ohio-4703, ¶ 18 (holding remand was required where an appellate court applied the abuse-of-discretion standard). Sufficiency of the evidence and manifest weight of the evidence are two distinct and different concepts: "'sufficiency is a test of adequacy'" while manifest weight depends on the evidence's "'"effect in inducing belief'."'" *Id.* at ¶ 13, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386-387 (1997), quoting *Black's Law Dictionary* (6th Ed. 1990). The court explained:

> "Whether the evidence is legally sufficient to sustain a verdict is a question of law." [*Thompkins*] at 386. "When applying a sufficiency-of-the-evidence standard, a court of appeals should affirm a trial court when "'the evidence is legally sufficient to support the jury verdict as a matter of law."'" *Bryan-Wollman v. Domonko*, [2007-Ohio-4918,] ¶ 3, quoting *Thompkins* at 386, quoting Black's at 1433.
>
> But "even if a trial court judgment is sustained by sufficient evidence, an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *Eastley* [*v. Volkman*, 2012-Ohio-2179,] ¶ 12. When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id.* at ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. "The underlying

rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 10 Ohio B. 408, 461 N.E.2d 1273 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*Id.* at ¶ 13-14. Finally, we note that although sufficiency and manifest weight are distinct legal concepts, a finding that a judgment is supported by the manifest weight of the evidence necessarily includes a finding that sufficient evidence supports the judgment. *In re M.T.*, 2024-Ohio-3111, ¶ 40 (8th Dist.), citing *In re L.H.*, 2024-Ohio-2271, ¶ 29 (8th Dist.).

### B. Permanent Custody Determination

{¶ 11} In her sole assignment of error, Mother argues that the juvenile court's granting of permanent custody of Children to CCDCFS was against the manifest weight of the evidence.

{¶ 12} Both the U.S. and Ohio Supreme Courts recognize that parents have a basic and fundamental interest in the care, custody, and management of their children. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *In re Murray*, 52 Ohio St.3d 155, 157 (1990); *In re C.F.*, 2007-Ohio-1104, ¶ 28. Parental rights, however, are not absolute, and a parent's natural rights are always subject to the ultimate welfare of the child. *In re K.M.*, 2015-Ohio-4682, ¶ 15 (10th Dist.), citing *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). Therefore, the "[t]ermination of parental rights is an

alternative of last resort but is sanctioned when necessary for the welfare of a child." *In re M.S.*, 2015-Ohio-1028, ¶ 7 (8th Dist.), citing *In re Wise*, 96 Ohio App.3d 619, 624 (9th Dist. 1994). By terminating parental rights, the goal is to create a more stable life for dependent children and to facilitate adoption to foster permanency for children. *In re L.W.*, 2017-Ohio-657, ¶ 21 (8th Dist.), quoting *In re N.B.*, 2015-Ohio-314, ¶ 67 (8th Dist.).

{¶ 13} The termination of parental rights is governed by R.C. 2151.414 and determined by a two-prong test established therein. *In re J.C-A.*, 2020-Ohio-5336, ¶ 78 (8th Dist.), citing *In re M.H.*, 2002-Ohio-2968, ¶ 22 (8th Dist.). Before a court may terminate parental rights and award permanent custody of a child to the proper agency, it must determine by clear and convincing evidence that (1) one of the factors enumerated in R.C. 2151.414(B)(1)(a)-(e) applies, and (2) an award of permanent custody is in the child's best interest. R.C. 2151.414(B)(1).

{¶ 14} "'Clear and convincing evidence is that measure or degree of proof, which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re Z.C.*, 2023-Ohio-4703, at ¶ 7, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. In instances where clear and convincing proof is required, "'a reviewing court will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof.'" *Id.* at ¶ 8, quoting *State v. Schiebel*,

55 Ohio St.3d 71, 74 (1990), citing *Ford v. Osborne*, 45 Ohio St. 1 (1887), paragraph

two of the syllabus.

## 1. First Prong:  R.C. 2151.414(B)(1)(a)-(e) Factors

{¶ 15} Pursuant to R.C. 2151.414(B)(1):

[T]he court may grant permanent custody of a child to a movant if the court determines at the hearing . . ., by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that *any* of the following apply:

(a) The child is not abandoned or orphaned [or] has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . . and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.[4]

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . . .

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been

---

[4] "When assessing whether a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents under R.C. 2151.414(B)(1)(a), a juvenile court must consider the factors outlined in R.C. 2151.414(E)."  *In re L.H.*, 2024-Ohio-2271, at ¶ 34 (8th Dist.), citing *In re A.V.*, 2014-Ohio-5348, ¶ 58 (8th Dist.), *In re R.M.*, 2012-Ohio-4290, ¶ 14 (8th Dist.), and *In re B.P.*, 2019-Ohio-2919, ¶ 13 (8th Dist.).  If the court finds, by clear and convincing evidence, that at least one of the enumerated factors exists as to each of the child's parents, the juvenile court must find that the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents.  R.C. 2151.414(E).

adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

"Only one of the factors must be present to satisfy the first prong of the two-part analysis for granting permanent custody to an agency." *In re D.H.*, 2021-Ohio-3821, ¶ 27 (8th Dist.), citing *In re L.W.*, 2017-Ohio-657 at ¶ 28 (8th Dist.).

{¶ 16} Here, the trial court found that two of the R.C. 2151.414(B)(1) conditions existed: (1) Children could not be placed with either parent within a reasonable time or should not be placed with their parents under R.C. 2151.414(B)(1)(a) and (2) Children had been in the temporary custody of CCDCFS for 12 or more months of a consecutive 22-month period under R.C. 2151.414(B)(1)(d).   On appeal, Mother appears to challenge the trial court's determination that Children could not be placed with her in a reasonable timeframe and argues "no evidence was proffered that would show that [she] would not be available within the statutory time limit . . . ."[5]   However, clear and competent evidence within the record supports the trial court's finding under R.C. 2151.414(B)(1)(d): Children were placed in the emergency temporary custody of

_____

[5] We note that mother cites to R.C. 2151.353 to establish certain requirements for terminating her parental rights.  R.C. 2151.353 applies when a complaint for abuse, neglect, or dependency contains a prayer request for permanent custody, temporary custody, or placement in a planned permanent living arrangement.  CCDCFS did not request permanent custody as part of its neglect and dependency complaint and permanent custody was not awarded under that dispositional order.  Rather, CCDCFS moved for permanent custody after Children were adjudicated neglected and dependent and committed to the temporary custody of CCDCFS.  R.C. 2151.353(C) provides that if a motion is filed requesting permanent custody following an order of disposition committing a child adjudicated abused, neglected, and/or dependent to temporary custody, the court may grant permanent custody of the child to the movant in accordance with R.C. 2151.414.

CCDCFS in July 2021 and had remained in CCDCFS's continuous, temporary custody at the time of the hearing in March 2024. Mother does not dispute this finding. Because only one factor is needed, the first prong of the two-part analysis is satisfied and we need not consider the trial court's findings under R.C. 2151.414(B)(1)(a).

## 2. Second Prong: Children's Best Interest

{¶ 17} In determining the best interest of a child, the juvenile court must consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . .;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶ 18} Although a trial court is required to consider each relevant factor under R.C. 2151.414(D)(1) in deciding to award permanent custody, "[t]here is not one element that is given greater weight than the others pursuant to the statute." *In*

*re Schaefer*, 2006-Ohio-5513, ¶ 56. The Ohio Supreme Court has held that "R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all the statute requires." *In re A.M.*, 2020-Ohio-5102, ¶ 31.

{¶ 19} Here, the juvenile court considered the evidence and testimony presented at the hearing, as well as the GAL's report, and specifically referenced the R.C. 2151.414(D)(1)(a) through (d) factors in its decision. The juvenile court ultimately found that Mother was incarcerated and unavailable to care for Children. Children were placed with Grandmother, and Children's return to Mother's home would be contrary to their best interests. On appeal, Mother disputes these findings, arguing that she completed the majority of her case plan and showed a willingness to work with CCDCFS to reunify with Children. Mother asserts that R.C. 2151.414(D)(1)'s best-interest-factors were not established and evidence was not presented that would legally authorize the permanent severing of her parental rights.

{¶ 20} After weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we cannot say that the juvenile court clearly lost its way in its resolution of evidentiary conflicts and created a manifest miscarriage of justice in finding that permanent custody was in Children's best interests. The record reveals that while Children are bonded with and love Mother and experience positive interactions with their Mother, Mother is currently incarcerated, is not expected to be released until 2027, and was unable to secure

housing prior to her incarceration. The record demonstrates that Children also are bonded with Grandmother and are doing well under her care. The record further reveals that since July 2021, while under CCDCFS's temporary custody, Children have been placed in foster care and with Grandmother. The GAL emphasized the importance of permanency in Children's lives and ultimately opined that permanent custody was in Children's best interest, especially considering Mother's incarceration and Grandmother's efforts to "go out of her way" to meet Children's needs. Thus, there is clear and convincing evidence in the record to support a finding of permanency based on the best-interest factors set forth in R.C. 2151.414(D)(1)(a)-(d). Consequently, we find that the second prong of the permanent-custody analysis is satisfied.

{¶ 21} Accordingly, we hold that the juvenile court's award of permanent custody is supported by sufficient evidence within the record and is not contrary to that evidence's manifest weight. Mother's single assignment of error is overruled.

{¶ 22} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR